[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10232
_____

D.C. Docket No. 8:09-cr-00352-VMC-MAP-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BEN BANE,

Defendant-Appellant.


_____

No. 18-11086
_____

D.C. Docket No. 8:09-cr-00352-VMC-MAP-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GREGORY BANE,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(January 24, 2020)

Before WILLIAM PRYOR, MARTIN, and SUTTON,[*] Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

These appeals require us to decide whether Ben and Greg Bane may use a writ of error *coram nobis* to challenge a forfeiture judgment. After a jury convicted Ben and Greg of federal crimes related to their healthcare-fraud scheme, the district court imposed a forfeiture judgment, which stated that "the defendants are jointly and severally liable" for the total proceeds of the scheme—$5,846,685. Neither Ben nor Greg challenged the forfeiture judgment on direct appeal, and the government obtained property from both Ben and Greg to satisfy their forfeiture obligations. After the Supreme Court held in *Honeycutt v. United States*, 137 S. Ct. 1626, 1630 (2017), that a different forfeiture statute does not permit joint-and-several liability, Ben and Greg filed motions for relief. The district court denied their motions, and they appealed. We affirm because Ben and Greg procedurally defaulted their claims.

_____

[*] Honorable Jeffrey S. Sutton, United States Circuit Judge for the Sixth Circuit, sitting by designation.

2

## I. BACKGROUND

Ben and his son Greg committed healthcare-fraud offenses in connection with their operation of two companies. Ben owned and operated the companies and Greg was the Vice President of Operations. The companies provided medical equipment, such as portable oxygen, to Medicare patients. For Medicare to reimburse the companies for the portable oxygen, an independent lab had to determine that the oxygen was medically necessary. Instead of following that crucial step, the companies performed the testing themselves and told Medicare that they had used independent labs.

In 2010, a grand jury charged Ben and Greg by superseding indictment with one count of conspiracy to commit healthcare fraud, 18 U.S.C. §§ 287, 371, 1001, 1347, five counts of healthcare fraud, *id.* §§ 2, 1347, and four counts of making false claims for reimbursement to a healthcare benefit program, *id.* §§ 2, 287. The indictment also contained a forfeiture notice, which stated that the government was entitled to forfeit "any and all right, title, and interest [the Banes] may have in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." *See id.* § 982(a)(7); *see also* 21 U.S.C. § 853(p). The forfeiture notice estimated that the proceeds of the offense totaled $5,000,000 and said that "the defendants are jointly and severally liable."

3

That forfeiture notice came to fruition after a jury convicted Ben and Greg. The district court granted the government's motion for a preliminary order of forfeiture in the amount of $5,846,684.54 and a preliminary order of forfeiture for substitute assets. *See* 18 U.S.C. § 982(a)(7); 21 U.S.C. § 853(p). Ben and the government had stipulated that "the amount of proceeds traceable to the commission of the offenses for which he was convicted, and the forfeiture money judgment amount that should be entered by the Court at sentencing, is $5,846,684.54." As with the forfeiture notice in the indictment, the preliminary order of forfeiture stated that "the defendants are jointly and severally liable" for the total forfeiture amount. Consistent with joint-and-several liability, the order listed property—belonging to Ben and Greg—that was subject to forfeiture. The preliminary order of forfeiture became final as to Ben and Greg when the district court included it in their final judgments. And in November 2011, the district court granted the government's motion for a final order of forfeiture. Neither Ben nor Greg appealed the preliminary or final orders.

Several years later, Ben and Greg saw an opportunity to challenge the forfeiture judgments when the Supreme Court interpreted a different forfeiture statute not to permit joint-and-several liability. *Honeycutt*, 137 S. Ct. at 1630; *see also United States v. Elbeblawy*, 899 F.3d 925, 941–42 (11th Cir. 2018) (holding that the reasoning of *Honeycutt* applies to the healthcare-fraud forfeiture statute).

4

Ben and Greg believed that the rule from *Honeycutt* should apply to them, but they struggled to find a way to bring that claim in the district court. Ben had a pending motion to vacate his sentence, 28 U.S.C. § 2255, and filed a motion based on *Honeycutt* in that proceeding. He then filed a motion for summary judgment to encourage the district court to rule on the pending *Honeycutt* motion. Greg filed a "Motion In Opposition" to the forfeiture judgment. The district court struck Ben's motion for summary judgment because it concluded that he was challenging the final order of forfeiture and lacked standing to bring that challenge. And it denied Greg's motion as untimely because Greg filed it "more than six years after his sentencing." Ben and Greg appealed, and we appointed counsel. Their counsel now argue that the appropriate vehicle for the claims is the common-law writ of error *coram nobis*.

## II. STANDARDS OF REVIEW

"We review *de novo* questions of our jurisdiction." *United States v. Amodeo*, 916 F.3d 967, 970 (11th Cir. 2019). We review the denial of a writ of error *coram nobis* for abuse of discretion. *United States v. Peter*, 310 F.3d 709, 711 (11th Cir. 2002). "[W]e may affirm for any reason supported by the record." *United States v. Al–Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008) (internal quotation marks omitted).

5

### III. DISCUSSION

The parties invite us to decide many issues in these appeals, such as whether *Honeycutt* announced a new rule that applies retroactively and whether a writ of error *coram nobis* may be used to challenge a forfeiture judgment, but we need not decide those questions to resolve these appeals. Even assuming that *Honeycutt* applies retroactively and that *coram nobis* may be used for this purpose, Ben and Greg are not entitled to relief because their failure to challenge their forfeiture judgments on direct appeal means they cannot challenge them now. But before we address their procedural default, we must first confirm that Ben and Greg have standing to bring this challenge.

### A.  Ben and Greg Have Standing.

A defendant has standing to challenge a preliminary order of forfeiture because that order causes his injury—the loss of his property. *Amodeo*, 916 F.3d at 972; *United States v. Flanders*, 752 F.3d 1317, 1343 (11th Cir. 2014). A final order of forfeiture, in contrast, is entered after the defendant has already lost ownership of the property and decides only third parties' rights in the property. *Amodeo*, 916 F.3d at 972. Ben and Greg have standing because they are challenging the preliminary order of forfeiture. Their motions in the district court claim that the district court erred when it held them jointly and severally liable for the forfeiture judgment. A complaint about the district court's method of determining their

6

forfeiture liability is a complaint about the loss of their property—caused by the

*preliminary* order of forfeiture. Assured that we have jurisdiction to hear these

appeals, we turn to procedural default.

## B. Ben and Greg Procedurally Defaulted Their Claims.

When a defendant fails to make a claim on direct appeal, procedural default

ordinarily bars him from making that claim on collateral review. *McKay v. United*

*States*, 657 F.3d 1190, 1196 (11th Cir. 2011); *Peter*, 310 F.3d at 711. But the bar is

not absolute. He can overcome it if he establishes cause and prejudice. *McKay*, 657

F.3d at 1196. Or he can avoid the procedural-default bar altogether, meaning he

can raise a claim for the first time on collateral review without demonstrating cause

and prejudice, if the alleged error is jurisdictional. *Peter*, 310 F.3d at 711–13.

Ben and Greg attempt to use both of those ways to avoid procedural default.

They first argue that a *Honeycutt* error is jurisdictional, and if not, they have

overcome the procedural default. We reject both arguments in turn.

## 1.  A *Honeycutt* Error Is Not A Jurisdictional Error.

Ben and Greg argue that they are permitted to raise their *Honeycutt* claims

for the first time on collateral review because a *Honeycutt* error is jurisdictional.

The Supreme Court has instructed courts to use caution in labeling errors

"jurisdictional." *See Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs &*

*Trainmen Gen. Comm. of Adjustment*, 558 U.S. 67, 81 (2009). Jurisdiction refers to

7

"the courts' statutory or constitutional *power* to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (internal quotation marks omitted); *see also Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010); *Union Pac.*, 558 U.S. at 81. Federal district courts have statutory power to adjudicate prosecutions of federal offenses. 18 U.S.C. § 3231. Because the prosecution must be for a federal offense, we have held that when an indictment affirmatively alleges conduct that is not a federal offense, it does "not invoke the district court's jurisdiction to enter judgment or accept a guilty plea." *United States v. Brown*, 752 F.3d 1344, 1352–53 (11th Cir. 2014); *accord Peter*, 310 F.3d at 713, 715. In *Peter*, for example, we held that the district court committed a jurisdictional error when it accepted a guilty plea to mail fraud when the indictment contained allegations of conduct that was "outside the reach of the mail fraud statute." 310 F.3d at 715.

Ben and Greg rely on *Peter* to argue that a *Honeycutt* error is jurisdictional. They do not dispute that the indictment alleged that they engaged in conduct that qualifies as federal offenses. Instead, they focus on something else in the indictment: the forfeiture notice, which stated that "the defendants are jointly and severally liable" for the total forfeiture amount. They contend that allegations of a type of liability that the forfeiture statute does not permit are the same as allegations of conduct that is not a federal offense.

8

This argument fails because the forfeiture notice is included in the indictment to provide the defendant with notice, not to invoke the subject-matter jurisdiction of the district court. Forfeiture is not a federal offense. *Libretti v. United States*, 516 U.S. 29, 38–39 (1995). It is only "an element of the *sentence* imposed *following* conviction" of a federal offense. *Id.* (first emphasis added). Although the Federal Rules require the charging document to contain notice of the forfeiture, they require the government to designate that notice in a manner different from the charged federal offenses, which are laid out in counts. *See* Fed. R. Crim. P. 7(c)(1), 32.2(a). The federal offenses in Ben and Greg's indictment invoked the court's authority to adjudicate the prosecutions, and the error in the forfeiture notice did not affect that authority.

Ben and Greg also argue that a *Honeycutt* error is jurisdictional because the district court acted without authority when it used joint-and-several liability to impose a forfeiture amount above what the forfeiture statute permitted. *See Honeycutt*, 137 S. Ct. at 1631–32. They cite nineteenth-century Supreme Court decisions, such as *Bigelow v. Forrest*, 76 U.S. (9 Wall.) 339, 351 (1869), and *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 176–77 (1873), to argue that when a district court exceeds its authority, it acts without jurisdiction.

This argument fares no better than their first. The Supreme Court has clarified that the concept of "jurisdiction" has narrowed since those decisions. *See*

9

*Cotton*, 535 U.S. at 630. To the extent that later decisions have suggested that a court may commit a jurisdictional error when it acts without authority, *see Welch v. United States*, 136 S. Ct. 1257, 1265 (2016); *Montgomery v. Louisiana*, 136 S. Ct. 718, 730–31 (2016), the Supreme Court has not applied that rule to statutory errors in calculating the amount of a forfeiture judgment, and we decline to extend it here. We find support for this conclusion in the way our Court has treated similar errors in the context of restitution. Restitution and forfeiture both apply after conviction of a federal offense, do not have a statutory range, and require the defendant to pay money owed to the victim or the government, respectively. In the restitution context, we have reviewed for plain error when the district court exceeded its authority by imposing restitution beyond that allowed by the restitution statute. *United States v. Cobbs*, 967 F.2d 1555, 1557–58 (11th Cir. 1992) (applying plain-error review to the claim that "a court order[ed] restitution beyond that authorized by the Victim and Witness Protection Act"); *accord United States v. Davis*, 714 F.3d 809, 815–16 (4th Cir. 2013); *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005); *United States v. Randle*, 324 F.3d 550, 555 (7th Cir. 2003). And that standard of review does not apply to jurisdictional errors. *See Cotton*, 535 U.S. at 631 ("Freed from the view that [the error is jurisdictional], we proceed to apply the plain-error test . . . ."). So precedent establishes that an order

10

of restitution greater than the amount the statute permits, like a *Honeycutt* error, is not jurisdictional.

### 2. Procedural Default Bars Ben's and Greg's Claims.

As a non-jurisdictional error, Ben and Greg needed to raise their *Honeycutt* claims on direct appeal to avoid procedural default. *See McKay*, 657 F.3d at 1196. Greg acknowledges that he did not challenge his forfeiture judgment on direct appeal, but he contends that procedural default does not apply because he "put the factual basis for his *Honeycutt* claim before the district court." Even assuming that contention is true, procedural default applies because Greg did not challenge the forfeiture judgment on *appeal*. *See United States v. Pearson*, 940 F.3d 1210, 1213 n.6 (11th Cir. 2019) (citing *McKay*, 657 F.3d at 1196). So their failure to bring these claims on direct appeal means that they may not bring them now unless they can demonstrate cause and prejudice to overcome their procedural defaults. *McKay*, 657 F.3d at 1196. The cause-and-prejudice standard requires "showing cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." *Id.* (alteration adopted) (internal quotation marks omitted). Ben and Greg have not made either showing.

Ben and Greg argue that they have established cause because it would have been novel and futile to challenge the imposition of joint-and-several liability on direct appeal. They contend that when the district court imposed the forfeiture, our

11

Court and every other circuit to have considered the issue decided that joint-and-several liability applies in the forfeiture context. *See, e.g.*, *United States v. Caporale*, 806 F.2d 1487, 1506 (11th Cir. 1986) (holding that joint-and-several liability applies to the forfeiture statute for the Racketeer Influenced and Corrupt Organizations Act); *United States v. Newman*, 659 F.3d 1235, 1244 (9th Cir. 2011) (affirming joint-and-several forfeiture liability and citing decisions from the Fourth, Fifth, and Sixth Circuits for support).

The novelty of a claim may constitute cause for excusing the procedural default, but only when the claim is truly novel, meaning that "its legal basis [was] not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984); *Hargrave v. Dugger*, 832 F.2d 1528, 1530–31 (11th Cir. 1987) (en banc). This exception to the procedural-default bar exists because the Supreme Court has acknowledged that it would be pointless to require "a defendant to raise a truly novel issue" that his counsel is likely unaware of and that the court would likely "reject . . . out of hand." *Ross*, 468 U.S. at 15–16. In *Hargrave*, for instance, we concluded that the petitioner's claim was novel because he relied on a Supreme Court decision that announced a new constitutional right for capital defendants. 832 F.2d at 1531 (citing *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)). In contrast, a claim is not novel when counsel made a conscious choice not to pursue the claim on direct appeal because of perceived futility, *Smith v. Murray*, 477 U.S. 527, 533–

12

35 (1986); *Ross*, 468 U.S. at 13–14, or when the building blocks of the claim were available to counsel. *McCoy v. United States*, 266 F.3d 1245, 1258–59 (11th Cir. 2001).

Ben's and Greg's claims are not novel in any sense of the word. As long as they had access to the United States Code and dictionaries—the tools the Supreme Court used in *Honeycutt*—they could have raised their claims on direct appeal. *See* 137 S. Ct. at 1632–33. *Honeycutt* was simply a matter of statutory interpretation; the Supreme Court did not announce a new constitutional right or overturn any Supreme Court precedent. *Id.* An argument for an interpretation of a statute that is consistent with its ordinary meaning and structure is not something that counsel would not be aware of or that courts would "reject . . . out of hand." *Ross*, 468 U.S. at 15. That leaves Ben and Greg with only perceived futility, which does not establish cause. *Bousley v. United States*, 523 U.S. 614, 623 (1998) ("[F]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." (internal quotation marks omitted)); *cf. McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1087 (11th Cir. 2017) (en banc) (explaining that a postconviction remedy is not "inadequate or ineffective" when using it to make a particular claim would likely fail because of adverse circuit precedent). Ben and Greg have failed to establish cause for not raising their claims on direct appeal.

The second requirement for overcoming procedural default is prejudice. But overcoming the procedural-default bar requires both cause *and* prejudice, not one or the other. *McKay*, 657 F.3d at 1196. So their failure to establish cause is fatal, as is their failure to make an argument about prejudice until their reply briefs, *Riechmann v. Fla. Dep't of Corr.*, 940 F.3d 559, 579 (11th Cir. 2019).

Even if we were to look past these failures, Ben and Greg have not established prejudice. To establish prejudice, they would have to prove that they suffered actual prejudice, not merely "the possibility of prejudice." *Fordham v. United States*, 706 F.3d 1345, 1350 (11th Cir. 2013). The error must have been one "of constitutional dimensions" and worked to their "actual and substantial disadvantage." *Id.* Ben and Greg cannot satisfy this tough standard. It is undisputed that Ben was the owner and operator of the two companies and the mastermind behind the fraud. And he has failed to prove that he was not responsible for the entire proceeds of the fraud. *See Honeycutt*, 137 S. Ct. at 1635 (holding that "property the defendant himself actually acquired as the result of the crime" is subject to forfeiture). Greg also cannot establish prejudice because he has failed to prove that the government could not have obtained his same property through restitution instead of forfeiture. It is well established that the government may "double dip" by obtaining the same amount in forfeiture and restitution. *United States v. Hoffman–Vaile*, 568 F.3d 1335, 1344 (11th Cir. 2009). The government

14

opted to obtain Greg's property through forfeiture instead of restitution, but nothing suggests that it would not have turned to restitution instead if it had known that forfeiture was unavailable. If it had, Greg would be in the same position he is in now.

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of the United States.

MARTIN, Circuit Judge, concurring in part and dissenting in part:

The majority opinion is right to say that Ben and Greg Bane procedurally defaulted their claims contesting their joint and several liability for the forfeiture ordered in their cases. But in contrast to the majority, I believe Montgomery v. Louisiana, 577 U.S. ___, 136 S. Ct. 718 (2016), and Welch v. United States, 578 U.S. ___, 136 S. Ct. 1257 (2016), require us to hold that it was jurisdictional error for the District Court to impose joint and several forfeiture liability against Greg Bane. The majority declines to extend the reasoning in Montgomery and Welch to forfeiture judgments. My reading of the precedent suggests that we should. And "the doctrine of procedural default does not apply" to jurisdictional error. United States v. Peter, 310 F.3d 709, 713 (11th Cir. 2002) (per curiam). I write separately to set out why I believe Greg Bane's waiver did not bar him from challenging his forfeiture judgment.

Ben and Greg Bane were both convicted of healthcare-fraud offenses. However, the benefits each acquired from their crimes were dramatically different. Ben Bane stipulated that proceeds traceable to the offenses which he committed amounted to $5,846,684.54. But Greg Bane, unlike his dad, received only de minimis compensation for his role in the offenses. Mostly what Greg Bane got was his annual salary of approximately $30,000 for his work at the healthcare companies his father owned. Even so, after both Banes were convicted at trial, the

16

District Court granted the government's motion for a preliminary forfeiture order holding both Ben and Greg "jointly and severally liable" for the total forfeiture amount pursuant to 18 U.S.C. § 982(a)(7)—that is, $5,846,684.54. The District Court also entered a preliminary order of forfeiture for substitute assets, which became final at sentencing. As a result of these orders, Greg Bane had to forfeit his home, in which he had estimated equity of $141,696, as well as half his interest in his personal truck, which was valued at approximately $7,000.

The District Court took its authority to hold Greg Bane jointly and severally liable for all proceeds of the conspiracy from 18 U.S.C. § 982(a)(7), the healthcare-fraud forfeiture statute. Then several years after the District Court entered the Bane forfeiture order, our Court ruled that § 982(a)(7) does not allow the imposition of joint and several liability. United States v. Elbeblawy, 899 F.3d 925, 941–42 (11th Cir. 2018). Elbeblawy applied the reasoning of Honeycutt v. United States, 581 U.S. ___, 137 S. Ct. 1626 (2017), to § 982(a)(7). 899 F.3d at 941. Honeycutt addressed a separate (but similar) forfeiture statute, 21 U.S.C. § 853(a)(1), holding that it did not permit a defendant to be "held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." Honeycutt, 137 S. Ct. at 1630. Looking to other provisions of § 853 for guidance, the Supreme Court concluded that Congress "did not authorize the Government to confiscate substitute property from

17

other defendants or co-conspirators; it authorized the Government to confiscate assets only from the defendant who initially acquired the property and who bears responsibility for its dissipation." Honeycutt, 137 S. Ct. at 1634.  The Court expressed concern that permitting the government to confiscate substitute assets from other co-conspirators would be to "allow the Government to circumvent Congress' carefully constructed statutory scheme." Id.

Based on this Supreme Court ruling, I believe the District Court lacked the statutory authority to hold Greg Bane jointly and severally liable for the total forfeiture amount.  This is not because of the method the District Court used to calculate Greg Bane's forfeiture liability, but because of the amount of liability that it in fact imposed, which was substantively greater than what Greg Bane had acquired through the offenses of which he was convicted.  I recognize this record does not contain a careful accounting of the exact proceeds of the conspiracy that went to Greg Bane.  But it is nevertheless clear that Greg Bane got substantially less than $5,846,684.54.[1]  Thus, the District Court imposed a total forfeiture amount not authorized by statute, and this, in my view, was jurisdictional error.

Longstanding Supreme Court precedent has it that when courts impose punishments beyond what the statute authorizes, they act beyond their jurisdiction.

---

[1] Unlike Greg, Ben Bane has never argued that he did not "actually acquire" the full forfeiture amount.  Ben Bane has not shown that the District Court held him liable for proceeds he did notactually acquire.  I therefore see no jurisdictional error as to the forfeiture order against him.

18

See In re Bonner, 151 U.S. 242, 256, 14 S. Ct. 323, 325 (1894) (holding that a sentencing court was "without jurisdiction" to pass sentences that transcended its power); In re Mills, 135 U.S. 263, 270, 10 S. Ct. 762, 764 (1890) (same); Ex parte Lange, 85 U.S. (18 Wall) 163, 177 (1873) (holding that a sentence greater than what the legislature authorized was "void . . . , because in excess of the authority of the court, and forbidden by the Constitution").  It is true that, at the time these late-nineteenth-century cases were decided, the Supreme Court employed a "somewhat expansive" interpretation of jurisdiction in the service of correcting clear constitutional violations through habeas corpus relief.  United States v. Cotton, 535 U.S. 625, 630, 122 S. Ct. 1781, 1784 (2002) (quoting Custis v. United States, 511 U.S. 485, 494, 114 S. Ct. 1732, 1737 (1994)).  The majority notes that the Supreme Court has since narrowed its understanding of jurisdictional error in some respects.  For example, in Cotton, the Supreme Court overruled Ex parte Bain, 121 U.S. 1, 7 S. Ct. 781 (1887), when it held that defects in an indictment are not jurisdictional insofar as they "do not deprive a court of its power to adjudicate a case."  Cotton, 535 U.S. at 630, 122 S. Ct. at 1785.  But Cotton offers little guidance here because it did not address the question of whether the imposition of a sentence beyond the power granted by statute raises a jurisdictional question.  I believe it does.

Montgomery and Welch demonstrate the continued relevance of the "jurisdictional rationale" articulated in the late-nineteenth century cases.  My

19

colleague ably described this in Lester v. United States, 921 F.3d 1306, 1310 (11th Cir. 2019) (W. Pryor, J., respecting the denial of rehearing en banc).  The Montgomery Court, for example, relied heavily on the reasoning of Ex parte Siebold, 100 U.S. 371 (1879), in holding that convictions and punishments that are beyond the government's power to impose are "not just erroneous but contrary to law and, as a result, void."  Montgomery, 136 S. Ct. at 731 (citing Siebold, 100 U.S. at 376).  There was similar thinking from the Supreme Court after it struck down the residual clause of the Armed Career Criminal Act as void for vagueness in Johnson v. United States, 135 S. Ct. 2551 (2015).  Welch established retroactive application of Johnson because it "affected the reach of the underlying statute." Welch, 136 S. Ct. at 1265.  After Johnson rendered the residual clause "invalid," Welch said that portion of the statute could "no longer mandate or authorize any sentence."  Id.  This must be right, because courts are "prohibited from imposing criminal punishment beyond what Congress in fact has enacted by a valid law." Id. at 1268.  For well over a century, the Supreme Court has characterized such sentences as "void."  See In re Bonner, 151 U.S. at 256.

True, Montgomery and Welch presented the slightly different question of whether new constitutional rules had retroactive effect.  Nevertheless, they speak to the limits on the jurisdiction of courts to impose sentences not authorized by statute, insofar as courts have "no authority" to leave such sentences in place.

20

Montgomery, 136 S. Ct. at 731.  Based on this precedent, it must be true that objections to punishments imposed in excess of a court's authority "can never be waived by parties," even if that punishment was a forfeiture judgment, as opposed to a carceral sentence.  See Peter, 310 F.3d at 712.

I am not persuaded by the majority's ruling that forfeiture judgments entered without statutory authority should be treated differently from unauthorized carceral sentences.  "We have squarely held that 'criminal forfeiture acts in personam as a punishment against the party who committed the criminal act.'"  Elbeblawy, 899 F.3d at 940 (alteration adopted) (quoting United States v. Fleet, 498 F.3d 1225, 1231 (11th Cir. 2007)).  And we treat criminal forfeitures and incarceration similarly in other contexts.  See, e.g., Jeffers v. United States, 432 U.S. 137, 155, 97 S. Ct. 2207, 2218 (1977) (holding that "[f]ines . . . are treated in the same way as prison sentences for purposes of double jeopardy and multiple punishment analysis"); United States v. Bajakajian, 524 U.S. 321, 328, 118 S. Ct. 2028, 2033 (1998) (holding that criminal forfeiture under 18 U.S.C. § 982(a)(1) is subject to the limitations of the Excessive Fines Clause of the Eighth Amendment).  As this case illustrates, illegal forfeiture orders can impose debilitating burdens on criminal defendants well beyond the scope of any benefits they received from their criminal conduct.  I see no basis for distinguishing between various types of

21

punishment, where they have been imposed beyond the authority granted by statute.

And unlike the majority, I do not read United States v. Cobbs, 967 F.2d 1555 (11th Cir. 1992) (per curiam), to preclude such a holding.  The majority reasons that (1) since Cobbs applied plain-error review to a restitution order which was "beyond the statutory power of the court to impose," id. at 1558, and (2) because this court does not apply plain-error review to jurisdictional errors, then (3) Cobbs must stand for the rule that restitution greater than the amount the statute permits is not jurisdictional error.  Maj. Op. at 10.  This is a weak justification for upholding a sentence not authorized by statute.  Notably, the Cobbs court never discussed whether the error before it was jurisdictional.  Indeed, the jurisdictional question does not appear to have been raised by the parties at all.  What's more, Cobbs was an appeal from an order of criminal restitution, not forfeiture, and they are different.  967 F.2d at 1556 (vacating criminal restitution order).  Forfeiture "is meant to punish the defendant by transferring his ill-gotten gains to the United States."  United States v. Joseph, 743 F.3d 1350, 1354 (11th Cir. 2014) (per curiam).  Restitution, in contrast, is intended "to ensure that victims . . . are made whole for their losses" and is "not designed to punish the defendant."  United States v. Martin, 803 F.3d 581, 594–95 (11th Cir. 2015) (quotation marks omitted); see also United States v. Hernandez, 803 F.3d 1341, 1343–44 (11th Cir. 2015) (per

22

curiam) (describing the distinct roles played by restitution and forfeiture in criminal sentencing).  Because restitution orders do not serve the purpose of punishment, Cobbs's ruling about restitution does not govern what we must do here.

For these reasons, I would hold that the District Court's error in imposing a joint and several forfeiture award was jurisdictional and then reach the question of whether Greg Bane was entitled to relief.  I respectfully dissent from the majority's decision to the contrary.