[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  12-13563-P
_____

D.C. Docket No. 3:09-cv-00086-TWT


KENNETH EARL FULTS,

Petitioner-Appellant,

versus


GDCP WARDEN,

Respondent-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 26, 2014)

Before MARCUS, JORDAN, and DUBINA, Circuit Judges.

JORDAN, Circuit Judge:

Kenneth Earl Fults is under sentence of death in Georgia following his guilty

plea to the 1996 murder and kidnapping of Cathy Bounds, his next-door neighbor.

After the district court denied his petition for a writ of habeas corpus, *see* 28 U.S.C. § 2254, Mr. Fults filed a notice of appeal and obtained a certificate of appealability on a number of claims. Following review of the extensive record in this case, and with the benefit of oral argument, we affirm the denial of habeas relief.

## I

The Georgia Supreme Court, in its opinion on direct appeal, summarized the circumstances relating to Ms. Bounds' murder as follows:

> The evidence adduced at Fults' sentencing trial showed that he carried out a week-long crime spree which was centered, at least in part, upon his desire to murder a man who was engaged in a relationship with his former girlfriend. Fults first committed two burglaries, obtaining several handguns. After a failed attempt at murdering his former girlfriend's new boyfriend with one of the stolen handguns, Fults then burglarized the home of his next-door neighbors. After the male neighbor left for work, Fults forced his way through the front door wearing gloves and a hat pulled down over his face. Fults confronted the female occupant of the home, Cathy Bounds, brandishing a .22 caliber handgun he had stolen during one of the burglaries. Ms. Bounds begged for her life and offered Fults the rings on her fingers. Fults turned Ms. Bounds around toward the bedroom, either taped or forced her to tape her eyes closed by wrapping over six feet of electrical tape around her head, forced her into the bedroom, placed her face-down on her bed, placed a pillow over her head, and shot her five times in the back of the head.
>
> A search of Fults' trailer home revealed a boastful letter he had written in gang code in which he described the murder with some alterations of detail. Upon being confronted with this letter by a law enforcement officer, Fults confessed to killing Ms. Bounds but maintained that he had shot her by accident while in a dream-like state. The murder weapon was recovered from under Fults' trailer

2

home, and .22 caliber shell casings shown to have been fired by the murder weapon as well as items from the earlier burglaries were found behind Fults' trailer home.

*Fults v. State*, 548 S.E.2d 315, 318-19 (Ga. 2001).

Just before opening statements were set to begin in his trial, Mr. Fults pled guilty to charges of malice murder, burglary, kidnapping with bodily injury, and possession of a firearm in the commission of a crime. In May of 1997, at the conclusion of a three-day sentencing hearing, the jury found two aggravating circumstances – that the murder was committed during the course of the kidnapping with bodily injury, and that the murder was outrageously and wantonly vile, horrible, or inhuman – and fixed Mr. Fults' punishment at death. *Id.* at 322.

## II

The district court's denial of Mr. Fults' habeas corpus petition is subject to plenary review. *See, e.g., Owens v. McLaughlin,* 733 F.3d 320, 324 (11th Cir. 2013). Because his habeas corpus petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996), Mr. Fults can obtain relief only if the state court adjudication of a claim was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). This standard is "difficult to

meet." *Metrish v. Lancaster,* 133 S.Ct. 1781, 1786 (2013).

"A state court decision is 'contrary to' clearly established federal law when it arrives at an opposite result from the Supreme Court on a question of law, or when it arrives at a different result from the Supreme Court on 'materially indistinguishable' facts." *Owens,* 733 F.3d at 324 (quoting *Williams v. Taylor,* 529 U.S. 362, 405 (2000)). *See, e.g., Premo v. Moore*, 131 S.Ct. 733, 743 (2011) ("A state-court adjudication of the performance of counsel under the Sixth Amendment cannot be 'contrary to' *Fulminante*, for *Fulminante* – which involved the admission of an involuntary confession in violation of the Fifth Amendment – says nothing about the *Strickland* standard of effectiveness.").

Under the "unreasonable application" clause, we "grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the . . . case." *Pope v. Secretary,* 752 F.3d 1254, 1262 (11th Cir. 2014) (citations and some punctuation omitted). "An unreasonable application [of clearly established federal law] must be objectively unreasonable, not merely wrong; even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

4

disagreement." *White v. Woodall,* 134 S.Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).

Under § 2254(e)(1), a state court's findings of fact are "presumed to be correct," and a habeas petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." *Miller-El v. Cockrell*, 537 U.S. 322, 351 (2003). The Supreme Court has described the "clear and convincing" standard as an intermediate standard of proof that lies between proof by a preponderance of the evidence and proof beyond a reasonable doubt. *See Addington v. Texas*, 441 U.S. 418, 423-24 (1979). As we have interpreted "clear and convincing" evidence, the standard calls for proof that a claim is "high[ly] probab[le]." *United States v. Owens*, 854 F.2d 432, 436 (11th Cir. 1988). *See also Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (a proponent satisfies the "clear and convincing" evidence standard if it can "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable'") (citation omitted).

## III

On appeal, Mr. Fults argues that he is entitled to relief because one of the jurors in his case harbored racial animus against him; he is mentally retarded and ineligible for the death penalty under *Atkins v. Virginia,* 536 U.S. 304 (2002); his appellate counsel rendered ineffective assistance by not asserting trial counsel's

failure to investigate, and present evidence of, mental retardation; and his post-conviction counsel rendered ineffective assistance, which provides cause to overcome the default for certain claims under *Martinez v. Ryan,* 132 S.Ct. 1309 (2012). We address only the juror bias and mental retardation claims. With respect to the ineffective assistance of appellate counsel claim, we affirm for the reasons set forth in the district court's orders. With respect to the argument based on *Martinez*, although Mr. Fults makes conclusory assertions in his brief that his post-conviction counsel performed deficiently, he does not explain why the performance was deficient or how, if the performance was deficient, he was prejudiced. We therefore decline to address the argument. *See, e.g., United States v. Gupta*, 463 F.3d 1182, 1195 (11th Cir. 2006) ("We may decline to address an argument where a party fails to provide arguments on the merits of an issue in its initial or reply brief. Without such argument the issue is deemed waived.").

## A

We begin with Mr. Fults' claim of racial prejudice on the part of a juror, a claim which both the state court and the district court found was procedurally defaulted. Like those courts, we too conclude that this claim is barred.

## 1

When he filed his amended state habeas corpus petition in April of 2005 – almost eight years after the jury sentenced him to death – Mr. Fults generally

alleged, as part of Claim XVIII, that the "improper biases of jurors . . . infected their deliberations," causing them to "improperly prejudg[e]" his case. Record Excerpts, Vol. 1, Tab 7-46 at 67. Mr. Fults did not discuss or mention any specific juror in Claim XVIII.

Mr. Fults did, however, incorporate, and attach to his amended state habeas petition, a number of affidavits. One of these belonged to Thomas Buffington, who served on Mr. Fults' sentencing jury. Handwritten, and signed and notarized just two days before Mr. Fults filed his amended state habeas petition, Mr. Buffington's affidavit provided the following sworn testimony:

> 2. I served as a juror in the capital sentencing trial of Kenneth Fults in May 1997.
>
> 3. I have been on a jury before, but this was my first capital trial.
>
> 4. I don't know if he ever killed anybody, but that nigger got just what should have happened.
>
> 5. Once he pled guilty, I knew I would vote for the death penalty because that's what that nigger deserved.

D.E. 7-31 at 20. The affidavit was silent as to when Mr. Buffington first disclosed this information to Mr. Fults or his counsel, and Mr. Fults did not explain in his state habeas corpus petition how or when he and his counsel came to learn of Mr. Buffington's alleged prejudice.[1]

---

[1] The state record shows that, when questioned during voir dire, Mr. Buffington denied having any racial prejudices and said that it did not matter that Mr. Fults was black and that Ms. Bounds

The state, in its answer to Mr. Fults' amended state habeas petition, argued that the claim of juror prejudice relating to Mr. Buffington, among others, was not properly raised at trial or on appeal, and was therefore procedurally defaulted absent a showing of cause and prejudice. *See* Record Excerpts, Vol. I, Tab 7-50 at 15, 29-30. Mr. Fults did not respond to the state's procedural default argument on this claim prior to the evidentiary hearing.

Mr. Fults' trial and appellate counsel did not testify at the evidentiary hearing, so there is no testimony from them concerning the investigation or discovery of the claim relating to Mr. Buffington. In his post-hearing briefs Mr. Fults asserted, without providing any details, that this claim was not procedurally barred because the "factual basis for this claim was not reasonably available" to his trial and appellate counsel. *See* D.E. 11-16 at 58.

In its order denying Mr. Fults' amended state habeas petition, the state court ruled that the juror bias claim relating to Mr. Buffington was procedurally defaulted because it was not raised on direct appeal and Mr. Fults had not shown cause and prejudice. *See* Record Excerpts, Vol. II, Tab 11-83 at 5, 11-12. The Georgia Supreme Court denied Mr. Fults' application for a certificate of probable cause to appeal.

---

was white. Mr. Fults, however, did not provide this information to the state habeas court when faced with the state's procedural default argument.

8

Mr. Fults raised the claim of juror prejudice relating to Mr. Buffington in his federal habeas corpus petition. Yet, despite the state court's ruling that this claim was procedurally defaulted, Mr. Fults did not argue in his petition that this ruling was erroneous. Nor did he attempt to show cause and prejudice for the default. *See* Record Excerpts, Vol. II, Tab 22 at 99-100. The state, in its response to the petition, argued again that the claim relating to Mr. Buffington was procedurally defaulted, and subsequently filed a motion to dismiss this claim (and others) as barred. *See* Record Excerpts, Vol. II, Tab 24 at 11-12, 19-20; D.E. 25 at 28-29. In his response to the state's motion to dismiss, Mr. Fults conceded that this claim was "subject to default," but generally alleged, without any specific facts or details, that "the ineffective assistance of counsel constitutes cause to excuse the procedural default." D.E. 27 at 20-21 & n.13. That contention, of course, was contrary to the argument Mr. Fults had made in his state post-hearing brief – that the basis for the racial prejudice claim was not reasonably available to Mr. Fults' trial and appellate counsel.

The district court granted the state's motion to dismiss the claim relating to Mr. Buffington as procedurally defaulted. The district court noted that Mr. Fults had conceded the default, and explained that he had failed to brief the issue of cause and prejudice. *See* D.E. 30 at 12, 17-20.

Mr. Fults moved for reconsideration 64 days later, arguing that "the factual basis of [the juror prejudice claim relating to Mr. Buffington] was not reasonably apparent" to trial counsel or appellate counsel for the direct appeal because jurors are presumed to be impartial, because Mr. Buffington said during voir dire (a) that he did not harbor any racial prejudices and (b) that it did not matter that Mr. Fults was black and Ms. Bounds was white, and because there was nothing apparent from the record that would have alerted appellate counsel to Mr. Buffington's racial bias. *See* D.E. 32 at 5, 6. Again, however, Mr. Fults did not provide any details as to how and when he or his counsel investigated, or found out about, Mr. Buffington's alleged prejudice. Mr. Fults also argued in his motion for reconsideration that the failure to consider his juror bias claim on the merits would result in a fundamental miscarriage of justice because he might be executed "under a death sentence infected by racial prejudice." *See id.* at 7 n.6.

The district court denied Mr. Fults' motion for reconsideration for a number of reasons. First, it ruled that Mr. Fults' motion was untimely under Rule 59(e). Second, it held that, even if the motion was not untimely, it failed on the merits because Mr. Fults could not use Rule 59(e) to raise new cause and prejudice arguments, particularly when he did not explain why he was unable to present those arguments earlier. Third, it said that, "[i]n any event, the evidence of racial

10

bias is based entirely upon inadmissible juror impeaching evidence." *See* D.E. 45 at 7.

**2**

Whether Mr. Fults' juror bias claim is procedurally defaulted presents a mixed question of law and fact. As a result, our review is plenary. *See Fordham v. United States,* 706 F.3d 1345, 1347 (11th Cir. 2013).[2]

Under Georgia law, the bias, prejudice, or misconduct of a juror "discovered after verdict [is a] proper ground for a new trial as newly discovered evidence." *Fields v. Balkcom,* 89 S.E.2d 189, 191 (Ga. 1955). *See, e.g., Brown v. State,* 164 S.E. 107, 107 (Ga. App. 1932) (granting new trial where affidavit showed that juror "was [probably] biased against the defendant" and the "state made no counter showing"). But Georgia courts require a defendant to seek relief soon after discovering the juror's bias, prejudice, or misconduct, and to show, with reference to specific facts, why the newly discovered evidence could not have been obtained by the exercise of ordinary diligence before trial. *See, e.g., Sharpe v. State,* 138 S.E. 52, 53 (Ga. 1927); *McDaniel v. State,* 243 S.E.2d 109, 109 (Ga. App. 1978); *Paul v. State,* 353 S.E.2d 10, 11 (Ga. App. 1987). Significantly, a mere statement that newly discovered evidence was unknown to defense counsel at the time of trial is insufficient to show ordinary diligence under Georgia law: "A recital . . . that the

---

[2] Because Mr. Fults does not deny that the state's procedural bar was adequate and independent, we do not address those matters. *See generally Cone v. Bell,* 556 U.S. 449, 465-66 (2009).

11

new evidence was unknown to the defendant or his counsel before and at the time of trial, and 'could not have been discovered by the exercise of ordinary diligence,' is a 'mere opinion on their part, and [gives] no facts by which the court could judge . . . whether they had used due diligence or not, and whether the evidence could have been discovered [before] by such use.'" *Johnson v. State,* 27 S.E.2d 749, 754 (Ga. 1943) (citation omitted) (alterations in original). *Accord Timberlake v. State,* 271 S.E.2d 792, 796 (Ga. 1980) ("There was no factual showing that this evidence could not have been discovered by the exercise of ordinary diligence. The mere assertion that the evidence could not have been discovered by ordinary diligence is insufficient."); *Mills v. State,* 17 S.E.2d 719, 723 (Ga. 1941) ("It will not suffice to allege merely that the evidence could not have been discovered by ordinary diligence."). On this record, the district court did not err in concluding that the claim of juror prejudice relating to Mr. Buffington was procedurally barred.

First, in his post-hearing brief in the state habeas proceeding Mr. Fults made only a general allegation that the basis for this claim was not reasonably available to his counsel. Because Mr. Fults did not provide any facts with respect to how he and his counsel exercised diligence – remember that his trial and appellate counsel did not testify at the evidentiary hearing – or how and when they came to learn of Mr. Buffington's alleged racial prejudice, it was insufficient to generally allege

that the evidence was not reasonably available.  *See, e.g., Timberlake,* 271 S.E.2d at 796; *Johnson,* 27 S.E.2d at 754; *Mills,* 17 S.E.2d at 723.

Second, even though Georgia law allows a defendant to overcome a procedural default by showing cause for the default and prejudice resulting from it, *see. e.g., Turpin v. Todd,* 493 S.E.2d 900, 905 (Ga. 1997), Mr. Fults did not assert (much less prove) any other basis for cause and prejudice in the state habeas proceeding.  We held in *Henderson v. Campbell,* 353 F.3d 880, 895-99 (11th Cir. 2003), that a cause and prejudice argument which is not presented in state court is itself procedurally defaulted and cannot be raised for the first time on federal habeas (unless, of course, there is cause and prejudice for that particular default as well).

Procedurally speaking, things did not get better for Mr. Fults in his federal habeas proceeding.  As noted earlier, Mr. Fults conceded in his response to the state's motion to dismiss that his claim of juror bias relating to Mr. Buffington was procedurally barred.  But, again, he failed to provide any specifics (factual or legal) as to how he could overcome the default.  He merely alleged, again without any supporting facts or evidence, that ineffective assistance of counsel provided cause for the default (an argument that was inconsistent with the argument made in the state post-hearing brief that the basis for the claim was not reasonably available to his trial and appellate counsel).  This conclusory allegation, bereft of details and

13

unsupported by evidence, was insufficient to satisfy the cause and prejudice standard. *See Henderson,* 353 F.3d at 897.

The district court also did not abuse its discretion, *see Rodriguez v. Fla. Dept. of Corr.,* 748 F.3d 1073, 1075 (11th Cir. 2014) (reviewing ruling on motion for reconsideration for abuse of discretion), in denying Mr. Fults' motion for reconsideration. In that motion, Mr. Fults for the first time (a) pointed to Mr. Buffington's answers during voir dire, (b) alleged (though again with no supporting affidavits or other evidence) that his trial and appellate counsel had no reason to suspect prejudice on the part of Mr. Buffington, and (c) argued that the failure to consider his juror bias claim on the merits would result in a fundamental miscarriage of justice. Mr. Fults, however, "gave no reason in his motion for reconsideration, nor does he now, [as to] why he failed to raise [these] new [arguments and] theor[ies] before [the district court ruled on the state's motion to dismiss]. Accordingly, it was well within the district court's sound discretion to deny the motion for reconsideration[.]" *Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 957 (11th Cir. 2009).

Moreover, as noted above, the district court ruled alternatively that the motion for reconsideration was untimely. Mr. Fults has not challenged that specific ruling on appeal, thereby abandoning any possible attack on it. So, even if the district court's other stated bases for denying the motion were wrong, Mr. Fults

14

is not entitled to reversal.  *See Little v. T-Mobile USA, Inc.,* 691 F.3d 1302, 1307-08 (11th Cir. 2012).

In an abundance of caution, we briefly discuss Mr. Fults' argument on appeal – an argument also made by The Cornell Death Penalty Project as amicus curiae – that failure to address the juror prejudice claim on the merits will result in a fundamental miscarriage of justice.  As the district court explained, this argument was raised for the first time in Mr. Fults' motion for reconsideration, and is itself also procedurally barred under *Henderson,* 353 F.3d at 897, because it was not presented in state court.  Putting those problems aside, the argument fails on the merits.  Although Mr. Fults alleged in his motion for reconsideration (and again asserts on appeal) that refusal to hear his juror bias claim would result in a fundamental miscarriage of justice, he has never even tried to make the necessary showing of actual innocence required in this context, i.e., that "but for [this] constitutional error, no reasonable juror would have found [him] eligible for the death penalty under applicable . . . law."  *Sawyer v. Whitley,* 505 U.S. 333, 336 (1992).  As a result, the fundamental miscarriage of justice argument does not provide Mr. Fults with any basis for relief.

**3**

As things stand today, we still do not know whether the submission of Mr. Buffington's affidavit almost eight years after the sentencing hearing was because

it took Mr. Fults and his counsel, acting with diligence, that long to learn about the alleged racial prejudice, or was due to ineffective assistance by Mr. Fults' counsel. If it is the former, we still do not know how or when Mr. Fults and his counsel learned about Mr. Buffington, and we still do not know what diligence (or lack thereof) Mr. Fults and his counsel exercised as to this claim between 1997 and 2005. If is the latter, we still do not know how it is that Mr. Fults' counsel supposedly rendered ineffective assistance with respect to Mr. Buffington's alleged bias. Mr. Fults, in sum, has failed to provide any specifics to the state or federal courts as to why the claim of racial prejudice relating to Mr. Buffington was not raised until 2005. Without such information, the district court did not err in ruling that this claim was procedurally barred.

**B**

Mr. Fults also contends that he is mentally retarded and that, as a result, he cannot be executed under *Atkins v. Virginia*, 536 U.S. 304 (2002). We conclude that the state court's contrary finding is not an unreasonable determination of fact "in light of the evidence presented" in the state court proceedings, and that Mr. Fults has not rebutted, by clear and convincing evidence, the presumption of correctness given to the state court's factual findings. *See* 28 U.S.C. §§ 2254(d)(2) & (e)(1).

16

A determination as to whether a person is mentally retarded is a finding of fact. *See Holladay v. Allen*, 555 F.3d 1346, 1353 (11th Cir. 2009) ("We review the district court's finding that Holladay is mentally retarded for clear error.") (citation omitted). This characterization is consistent with the way we treat determinations as to other relevant mental states in criminal law. *See, e.g., Lawrence v. Secretary*, 700 F.3d 464, 476-77 (11th Cir. 2012) (competency determination treated as a finding of fact); *United States v. Freeman*, 804 F.2d 1574, 1577 (11th Cir. 1986) (insanity determination treated as a finding of fact).

In *Atkins*, 536 U.S. at 317, the Supreme Court generally left to the states the task of developing appropriate ways to enforce the Eighth Amendment ban on the execution of the mentally retarded. Under Georgia law, a defendant must establish three things beyond a reasonable doubt to prove a claim of mental retardation: (1) that he has "significantly subaverage general intellectual functioning;" (2) that this functioning is "associated with impairments in adaptive behavior;" and (3) that the functioning and associated impairments "manifested during the developmental period." O.C.G.A. § 17-7-131(a)(3).[3]

The state habeas court, quoting from *Stripling v. State,* 401 S.E.2d 500, 504 (Ga. 1991), explained that "significantly subaverage intellectual functioning" was

---

[3] In *Hill v. Humphrey*, 662 F.3d 1335 (11th Cir. 2011) (en banc), we held, 7-4, that the Georgia Supreme Court, in upholding the beyond a reasonable doubt standard codified by the Georgia Legislature, had not ruled in a way that was contrary to, or an unreasonable application of, clearly established federal law. The holding in *Hill*, of course, is binding here.

17

generally defined as an IQ of 70 or below, noted that an IQ score is only accurate within a range of several points, and recognized that sometimes a particular score may be less accurate. And, citing to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (Third Ed. 1980) (the "DSM-III"), it further stated that persons with IQs somewhat lower than 70 are not diagnosed as mentally retarded if there are no significant deficits or impairments in adaptive functioning. *See* Record Excerpts, Vol. II, Tab 11-83 at 54.

After conducting an evidentiary hearing, the state habeas court rejected Mr. Fults' claim of mental retardation. First, Dr. Karen Bailey-Smith, who evaluated Mr. Fults pursuant to a court order, concluded that, although he had major depression, he was not mentally retarded. Dr. Bailey-Smith found Mr. Fults to have an IQ of 74, opined that he actually functioned in the IQ range of the upper 70s, and thought that he was "street smart" (meaning he could survive on the streets and take care of himself). According to Dr. Bailey-Smith, Mr. Fults could make decisions and choices, and did not have to rely on someone to support him. *See id.* at 55-56. Second, the defense attorneys and investigators were able to communicate well with Mr. Fults, considered him to be bright, and did not have any concerns about him being mentally retarded. *See id.* at 56. Third, the evidence presented by Mr. Fults at the evidentiary hearing to support his claim of mental retardation (e.g., the expert testimony of Dr. Jethro Toomer [who opined that Mr.

18

Fults had significant mental defects] and the affidavits of family members and friends [who stated, among other things, that Mr. Fults suffered from deficits in adaptive functioning]) was "not credible." *See id.* at 59.

As he did in the district court, Mr. Fults argues that the evidence he presented demonstrates that he has "significantly subaverage intellectual functioning" and is mentally retarded. As to this factor, he points to the fact that all of his IQ tests were – given the standard error of measurement of five points on a test – within the range of mental retardation: his first test (from 1989 at the age of 20) yielded an IQ of 68, with a corresponding range of 63-73; his second test (from 1996 at the age of 26) yielded an IQ of 74, with a corresponding range of 69-79; and his third test (from 2005 at the age of 35) yielded an IQ of 72, with a corresponding range of 67-77. He also relies on a number of other tests on which he scored very low, and which he argues are consistent with mental retardation. For example, during his state habeas proceedings testing showed that he had a fifth-grade reading level and third-grade math level.

Like the district court, we are not persuaded by Mr. Fults' argument that the state habeas court unreasonably applied *Atkins*. That the state habeas court found Mr. Fults' evidence to be not credible is not an indication, on this record, that it failed to follow the dictates of *Atkins*. As we read its order, the state habeas court

19

characterized Mr. Fults' evidence as not credible with respect to the ultimate issue of mental retardation, and not as shorthand for utter disregard or disbelief.

We also agree with the district court that the evidence Mr. Fults cites is insufficient to rebut, by clear and convincing evidence, the state habeas court's finding that he did not suffer from "significantly subaverage intellectual functioning." As the district court correctly explained, the state habeas court did not ignore Mr. Fults' evidence. Instead, it noted the evidence but found that it was not credible or persuasive. *See* Record Excerpts, Vol. II, Tab 71 at 11, 13.

In addition, the version of the Diagnostic and Statistical Manual (the "DSM-IV-TR" or Fourth Edition/Third Revision) in effect in 2007 – when the state habeas court rejected Mr. Fults' mental retardation claim – defines "significantly subaverage general intellectual functioning" as an IQ of approximately 70 or below on an individually administered IQ test. Mr. Fults scored higher than 70 on two of the three IQ tests he was administered, and the one on which he scored below 70 was the Test of Non-Verbal Intelligence (the "TONI"), which Mr. Fults admits is not considered sufficient for a diagnosis of mental retardation under the DSM-IV-TR. *See id.* at 13-14. *See also* Appellant's Br. at 66 (acknowledging that "the TONI is a screening test and . . . not sufficient for diagnostic purposes" under the DSM-IV-TR, but arguing that it "can serve as a useful part of a thorough assessment of whether an individual is mentally retarded"). Even Dr. Toomer,

20

Mr. Fults' own expert, testified that Mr. Fults' score of 72 on the Weschler Adult Intelligence Scale-Third Edition test might have been higher given more accurate scoring. *See* Record Excerpts, Vol. II, Tab 71 at 14.

In sum, Mr. Fults has not overcome the presumption of correctness afforded to the state habeas court's factual finding that he did not suffer from "significantly subaverage intellectual functioning." Stated differently, the state habeas court's denial of Mr. Fults' mental retardation claim is not based on an unreasonable determination of the facts given the record that was presented. *See, e.g., Lewis v. Thaler,* 701 F.3d 783, 793-95 (5th Cir. 2012).

We close by acknowledging that some of the arguments advanced by Mr. Fults – e.g., that Dr. Bailey-Smith's opinions were not based on thorough or proper testing for mental retardation, that his own evidence was stronger than the state habeas court thought – are not without some force. But we are not sitting as the initial triers of fact determining whether Mr. Fults is in fact mentally retarded. We are not even assessing factual findings made by a district court for clear error. We are reviewing the factual findings of the state habeas court through the prism of AEDPA, which calls for a presumption of correctness that can only be overcome by clear and convincing evidence.

## IV

The district court's denial of Mr. Fults' petition for a writ of habeas corpus is affirmed.

**AFFIRMED.**