[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 19-13165

_____

EMMANUEL LAUTURE,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A072-842-479

_____

Before JORDAN, JILL PRYOR, and TJOFLAT, Circuit Judges.

JORDAN, Circuit Judge:

The Board of Immigration Appeals, affirming the decision of an immigration judge, ruled that Emmanuel Lauture was removeable from the United States because his Florida conviction for burglary of an unoccupied dwelling, *see* Fla. Stat. § 810.02(3)(b), constituted a "crime involving moral turpitude" (a CIMT). Mr. Lauture now petitions for review of the BIA's decision.

Following oral argument and a review of the record, we grant Mr. Lauture's petition, vacate the BIA's judgment, and remand for further proceedings. Florida has applied § 810.02(3)(b) to a dwelling which was not occupied prior to or after the entry, *see State v. Bennett*, 565 So. 2d 803, 805 (Fla. 2d DCA 1990), and that application impacts whether a violation of § 810.02(3)(b) is a CIMT. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (the question is whether there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition" of a "listed crime in a federal statute"). Neither the IJ nor the BIA, however, addressed Mr. Lauture's argument about the impact of *Bennett*. The BIA must do so on remand.

I

Mr. Lauture was paroled into the United States in 2005 and became a lawful permanent resident in 2007. On July 13, 2010, he pled guilty to burglary of an unoccupied dwelling in violation of

Fla. Stat. § 810.02(3)(b).  He was originally sentenced to probation but later violated the terms of his probation and received a sentence of 40 months' imprisonment.

In 2018, the Department of Homeland Security served Mr. Lauture with a notice to appear, charging him with being subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(i), for having been convicted of a CIMT within five years of his admission.  DHS initiated removal proceedings against Mr. Lauture, and he responded by filing a motion to terminate.  He argued that his conviction for burglary of an unoccupied dwelling was not a CIMT.  In part, he cited *Bennett*, 565 So. 2d 803, for the proposition that a defendant "may be convicted of burglary to a dwelling for entering an unsold and unoccupied mobile home sitting on a sales lot."  A.R. at 159.  The DHS opposed the motion to terminate.

The IJ denied Mr. Lauture's motion to terminate and ordered Mr. Lauture removed.  She concluded that Florida's burglary statute was divisible and that a conviction for burglary of an unoccupied dwelling involved moral turpitude.  She focused on the particular dangers inherent in residential burglaries given the risk of a face-to-face encounter between an occupant and a burglar, and found that this risk remains even if a dwelling is unoccupied at the time due to the likelihood of confrontation between the burglar and a police officer or investigating bystander.  In her discussion of Florida law, the IJ did not discuss or analyze *Bennett*, which Mr. Lauture had cited.

In his brief to the BIA, Mr. Lauture argued in part that the Florida burglary statute "extends beyond the contemporary definition of burglary in that it includes conveyances." *Id.* at 30. In support of that argument, he again cited *Bennett*. *See id.* ("A defendant therefore may be convicted of burglary to a dwelling for entering an unsold and unoccupied mobile home sitting on a sales lot. *State v. Bennett*, 565 So. 2d 803 (Fla. 2d DCA 1990).").

The BIA dismissed Mr. Lauture's appeal. It concluded that burglary of an unoccupied dwelling under § 810.02(3)(b) categorically involves moral turpitude because the dwelling, even if unoccupied, must be suitable for a person to live in at night. As the BIA put it, Mr. Lauture had "not demonstrated a realistic probability that . . . Florida would prosecute a case of burglary of an unoccupied dwelling, which takes place within the curtilage thereof, where the dwelling was never occupied prior to or after the burglary occurred." *Id.* at 5 (emphasis removed). The BIA also reasoned that, under Florida law, "unoccupied" only means that "no one was physically present at the time of the burglary"—not that the dwelling was "abandoned, disused, or shuttered." *Id.* at 6. Because the BIA thought that Mr. Lauture had not presented any Florida case "in which the dwelling was truly *never* occupied," it determined he had not shown a realistic probability of prosecution for non-turpitudinous conduct. *Id.* at 8 (emphasis in original). Like the IJ, the BIA did not discuss *Bennett* even though Mr. Lauture had cited it in his appellate brief.

## II

We "review de novo the legal question of whether a[ ] conviction qualifies as a [CIMT]." *Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1240 (11th Cir. 2016). In determining whether a conviction is a CIMT, we employ the categorical approach (if the statute of conviction is not divisible and sets out alternative means of committing a single offense) or the modified categorical approach (if the statute of conviction is divisible and creates separate offenses). *See Pereida v. Wilkinson*, 141 S. Ct. 754, 762–63 (2021); *George v. U.S. Att'y Gen.*, 953 F.3d 1300, 1303–04 (11th Cir. 2020). Under either approach, we do not consider the facts underlying the conviction. *See, e.g., Fajardo v. U.S. Att'y Gen.*, 659 F.3d 1303, 1305–11 (11th Cir. 2011). Where the statute of conviction is divisible—i.e., where it sets out different offenses—and some of the crimes set out in the statute involve moral turpitude and others do not, the person seeking relief bears the burden of "prov[ing] that his actual, historical offense of conviction" is not a CIMT. *See Pereida*, 141 S. Ct. at 763.

## III

In this case, the IJ and the BIA concluded that Fla. Stat. § 810.02 is divisible and Mr. Lauture was convicted of violating Fla. Stat. § 810.02(3)(b). Based on our review of the statute, case law, and the record, we agree.

We start by explaining why, contrary to Mr. Lauture's arguments, § 810.02 is divisible. In a divisibility determination, our

"first task [when] faced with an alternatively phrased statute is . . . to determine whether its listed items are elements [and, therefore, different crimes] or means [of committing the same crime]." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). In *Mathis*, the Supreme Court "gave us a few rules of thumb to use to determine whether statutory alternatives are means or elements: [1] see how the state supreme court has defined the elements; [2] see if different statutory alternatives carry different penalties because different penalties means the listed items are different elements; [3] look at the statute itself to see if the statute identifies what a prosecutor must charge as elements; and [4] when all else fails, look at the record of conviction solely to see whether the listed items are elements." *Zarate v. U.S. Att'y Gen.*, --- F.4th ----, 2022 WL 499716, at *13 (11th Cir. Feb. 18. 2022) (Tjoflat, J., concurring) (citing *Mathis*, 136 S. Ct. at 2256).

Here, § 810.02 is divisible under *Mathis*' second rationale. That is because the different subsections of the statute carry different penalties.

Florida law defines burglary as "[e]ntering a dwelling, a structure, or a conveyance with the intent to commit an offense therein." § 810.02(1)(b)(1). As the Florida Supreme Court has explained, the burglary statute requires proof only that the defendant entered a place without authorization and with the intent to commit any other offense. *See Toole v. State*, 472 So. 2d 1174, 1175 (Fla. 1985) ("[B]eyond allegation and proof of unauthorized entry . . . the essential element to be alleged and proven on a charge of

burglary is the intent to commit *an* offense, not the intent to commit a specified offense, therein.").

As a whole, Fla. Stat. § 810.02 sets out several distinct burglary offenses with different penalties. For example, subsection (2) of § 810.02 makes certain burglaries first-degree felonies, while subsection (3) makes some burglaries second-degree felonies, and subsection (4) makes other burglaries third-degree felonies. That these different subsections carry different penalties shows that the statute is divisible into first-, second-, and third-degree felony offenses. Accordingly, we can narrow the scope of our inquiry to § 810.02(3).

But even subsection (3) is "alternatively phrased." *Mathis*, 136 S. Ct. at 2256. This subsection of the statute provides that a person is guilty of a second-degree felony if

> in the course of committing the offense, the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in a:
>
> (a) Dwelling, and there is another person in the dwelling at the time the offender enters or remains;
>
> (b) Dwelling, and there is not another person in the dwelling at the time the offender enters or remains;
>
> (c) Structure, and there is another person in the structure at the time the offender enters or remains;

8                         Opinion of the Court                    19-13165

> (d) Conveyance, and there is another person in the conveyance at the time the offender enters or remains;
>
> (e) Authorized emergency vehicle, as defined in s. 316.003; *or*
>
> (f) Structure or conveyance when the offense intended to be committed therein is theft of a controlled substance as defined in s. 893.02. . . .

Fla. Stat. § 812.02(3) (emphasis added).  For purposes of the burglary statute, a "dwelling" is defined as

> a building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof.

Fla. Stat. § 810.011(2).[1]

---

[1] The Supreme Court has held that Florida's burglary statute is broader than "generic burglary" because Florida's definition of dwelling includes a building's curtilage. *See James v. United States*, 550 U.S. 192, 212 (2007), *overruled on other grounds by Johnson v. United States*, 576 U.S. 591 (2015). Since *Johnson*, we have affirmed that Florida's statute reaches beyond generic burglary and cannot serve as a predicate "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e). *See United States v. Esprit*, 841 F.3d 1235, 1240 (11th Cir. 2016).  Nor is such a conviction considered a crime of violence

19-13165                Opinion of the Court                9

Upon examining the text of this subsection and the statute as a whole, we conclude that § 810.02(3) is further divisible in subsections (a) through (f).  In our view, the statute lists alternative offenses that constitute a second-degree felony, and whose elements are divided into subsections and listed conjunctively.  This is apparent not just from the way § 810.02(3) is phrased, but also from the statutory scheme as a whole.  For example, if the charge is for burglarizing a conveyance, the state must prove that the conveyance is occupied at the time the offender enters or remains to consider the conviction a second-degree felony under Florida law. *See* § 810.02(3)(d).  If the conveyance is unoccupied, burglary only qualifies as a third-degree felony and carries different penalties.  *See* § 810.02(4)(b).

Burglaries of occupied and unoccupied dwellings can both qualify as second-degree felonies.  But Mr. Lauture's record of conviction—our last guidepost under *Mathis*—convinces us that convictions for § 810.02(3)(a) and (b) are still charged and sentenced as different offenses with distinct elements.  In determining whether an actual, historical offense is a CIMT, the BIA and IJ may consider the record of conviction—i.e., the charging document, plea, verdict, and sentence—but nothing more.  *See Fajardo*, 659 F.3d at 1305.  According to the documents in the administrative record, Mr. Lauture pled guilty to and was convicted of "burglary of [an]

under § 2L1.2 of the United States Sentencing Guidelines.  *See United States v. Garcia-Martinez*, 845 F.3d 1126, 1134 (11th Cir. 2017).

unoccupied dwelling," an offense listed in the judgment as a second-degree felony ("F2") under § 810.02.  A.R. at 119 (judgment). *See also* A.R. at 137 (memorandum of sentencing).  The provision of § 810.02 that addresses burglary of an unoccupied dwelling is subsection (3)(b).

We therefore agree with the IJ and the BIA that Mr. Lauture's conviction was under § 810.02(3)(b), and now turn to whether that conviction was for a CIMT.

## IV

In the case of a person "who has been admitted to the United States," the government has the burden of establishing by "clear and convincing evidence" that he or she is removable.  *See* 8 U.S.C. § 1229a(c)(3)(A).  *See also Francisco v. U.S. Att'y Gen.*, 884 F.3d 1120, 1125 (11th Cir. 2018).  The government therefore bore the burden of establishing by clear and convincing evidence that Mr. Lauture's burglary conviction was a CIMT.  Clear and convincing evidence is proof that a contention or claim is "highly probable." *See Florida v. Georgia*, 141 S. Ct. 1175, 1180 (2021) (citation omitted); *Fults v. GDCP Warden*, 764 F.3d 1311, 1314 (11th Cir. 2014) (citation omitted).

## A

The term "moral turpitude" is not (and has never been) defined by a federal immigration statute or regulation.  So the meaning of the term has been left to the administrative and judicial adjudicative processes.

For its part, the BIA defines moral turpitude as "conduct that is 'inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.' To involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state." *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 833–34 (BIA 2016) (internal citations omitted). We defer to the BIA's definition and its application of that definition in precedential opinions. *See Negusie v. Holder*, 555 U.S. 511, 517 (2009); *Arevalo v. U.S. Att'y Gen.*, 872 F.3d 1184, 1187–88 (11th Cir. 2017).

Our own definition is consistent with the BIA's. We have described moral turpitude as involving "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Smith v. Att'y Gen.*, 983 F.3d 1206, 1210 (11th Cir. 2020) (citation omitted).

"Whether a crime involves the depravity or fraud necessary to be one of moral turpitude depends upon the inherent nature of the offense, as defined in the relevant statute, rather than the circumstances surrounding a defendant's particular conduct." *Itani v. Ashcroft*, 298 F.3d 1213, 1215–16 (11th Cir. 2002). *See also Keungne v. U.S. Att'y Gen.*, 561 F.3d 1281, 1284 (11th Cir. 2009) ("In other words, the determination that a crime involves moral turpitude is made categorically, based on the statutory definition or nature of the crime, not the specific conduct predicating a

particular conviction.").  The question is whether the "least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude." *Gelin*, 837 F.3d at 1241 (citation omitted).  *See also Zarate*, 2022 WL 499716, at *12 (Tjoflat, J., concurring) (applying the categorical approach to a hypothetical burglary statute).

As part of the categorical approach, we ask whether there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a [CIMT]." *Duenas-Alvarez*, 549 U.S. at 193.  *See also Pierre v. U.S. Att'y Gen.*, 879 F.3d 1241, 1252 (11th Cir. 2018) (applying the realistic probability test to a CIMT determination).  "To defeat the categorical comparison in this manner, [the person seeking relief must] demonstrate that the State actually prosecutes the relevant offense in cases involving [non-turpitudinous conduct]." *Moncrieffe v. Holder*, 569 U.S. 184, 206 (2013). *See also Matter of Ferreira*, 26 I. & N. Dec. 415, 422 (BIA 2014) ("[T]he 'realistic probability' test must be applied as part of the categorical approach[.]").

There are two lines of BIA precedent addressing whether a burglary offense constitutes a CIMT.  We discuss both below.

## B

In 1946, the BIA explained that it "ha[d] always maintained that [burglary] offenses may or may not involve moral turpitude, the determinative factor being whether the crime intended to be committed at the time of entry or prior to the breaking out

involves moral turpitude." *Matter of M-*, 2 I. & N. Dec. 721, 723 (BIA 1946) (collecting decisions). The BIA ruled in *Matter of M-* that third-degree burglary under New York law was not a CIMT, reasoning as follows:

> There is nothing inherently immoral, base, vile, or depraved in unlawfully breaking and entering a building in the State of New York when viewed in the light of the definition of those terms as set forth in section 400 of the Penal Law. For example, pushing ajar the unlocked door of an unused structure and putting one's foot across the threshold would constitute a breaking and entering. Certainly such an act, in and of itself, should not be stigmatized as base, vile or depraved. The only remaining element in the statute is the particular crime which accompanies or precedes the act of breaking out. It is this element alone that has any significance in the determination of moral turpitude.

*Id.* *See also Matter of Brieva-Perez*, 23 I. & N. Dec. 766, 772 (BIA 2005) (explaining that, under *Matter of M-*, burglary and breaking and entering "would not generally be considered crimes of moral turpitude unless accompanied by the intent to commit a morally turpitudinous crime, such as larceny, after entering"), *abrogated on different grounds by Judulang v. Holder*, 565 U.S. 42, 52 n.7 (2011).

Mr. Lauture's statute of conviction, § 810.02(3)(b), incorporates the general definition of burglary found in § 810.02(1)(b)(1). As noted earlier, burglary under Florida law requires only that the defendant enter the premises in question with the intent to commit

14                    Opinion of the Court                    19-13165

any other offense.  *See* § 810.02(1)(b)(1); *Toole*, 472 So. 2d at 1175. As a result, the least culpable conduct prohibited by § 810.02(3)(b), *see Gelin*, 837 F.3d at 1241 (citation omitted), is unauthorized entry with the intent to commit an offense which itself is not a CIMT. And that means that § 810.02(3)(b) is not categorically a CIMT under the rationale of *Matter of M-*.  *See Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1019 (9th Cir. 2005) ("Because, under Washington law, an intent to commit *any* crime satisfies the accompanying crime element of burglary, the offense encompasses conduct that falls outside the definition of a crime of moral turpitude.") (emphasis in original), *abrogated on different grounds by Holder v. Martinez Gutierrez*, 566 U.S. 583 (2012).[2]

## C

In *Matter of Louissaint*, 24 I. & N. Dec. 754, 756, 759 (BIA 2009), the BIA distinguished *Matter of M-* and concluded that burglary of an occupied dwelling with the intent to commit any crime therein, in violation of Fla. Stat. § 810.02(3)(a), is a CIMT.  The BIA reasoned that burglaries in dwellings are particularly concerning

---

[2] We held in *Esprit* that "'no conviction under [§ 810.02] can be assumed to be generic'" because Florida's definition of "dwelling" under that statute includes a dwelling's curtilage and thus extends beyond generic burglary.  *Esprit*, 841 F.3d at 1241 (citation omitted).  Though we characterized the statute as "a single indivisible crime" in that case, we did so only when considering whether the statute's treatment of dwellings could be divisible for purposes of separating qualifying "violent felon[ies]" under the ACCA from non-qualifying offenses.  *Id.*  The case did not address the divisibility of the statute when distinguishing CIMTs in the immigration context.

because "the burglar tears away the resident's justifiable expectation of privacy and personal security and invites a violent defensive response from the resident." *Matter of Louissaint*, 24 I. & N. Dec. at 758–59.[3]

The BIA extended *Matter of Louissaint* in *Matter of J-G-D-F-*, 27 I. & N. Dec. 82, 88 (BIA 2017), ruling that an Oregon statute criminalizing the burglary of an unoccupied dwelling is a CIMT provided that the dwelling is at least intermittently occupied. The BIA reasoned that such an extension of *Matter of Louissaint* was appropriate because the Oregon statute required, at a minimum, that the dwelling be regularly or intermittently occupied, raising the likelihood that a person might be present in the dwelling at the time of the offense and therefore involving "the same justifiable expectation of privacy and personal security as the Florida burglary offense [it] considered in [*Matter of*] Louissaint." *Id.*

The Ninth Circuit, focusing on the unique "sanctity of the home," denied the petition for review arising from *Matter of J-G-D-F-*. *See Diaz-Flores v. Garland*, 993 F.3d 766, 772 (9th Cir. 2021). The Ninth Circuit reasoned that because Oregon's burglary statute "requires the burglarized dwellings be regularly or intermittently

---

[3] At the time, the BIA erroneously noted that the Florida definition of burglary matched the generic definition, but it only found this detail "instructive" and "not dispositive." *Matter of Louissaint*, 24 I. & N. Dec. at 758 n.3. Thus, despite the more recent clarifications in *James*, *Esprit*, and *Garcia-Martinez* that Florida burglary of a dwelling stretches beyond the generic burglary of a dwelling, the underpinnings of *Matter of Louissaint* have not shifted.

occupied, a conviction will necessarily involve an intrusion onto the 'justifiable expectation of privacy and personal security' that people have in the places where they retreat at night for lodging." *Id.* (citing *Matter of J-G-D-F-*, 27 I. & N. Dec. at 88). The Ninth Circuit distinguished *Matter of M-*, explaining that the BIA's reasoning there "turned on [New York's] statutory definitions, which cast a wide net over a range of buildings, including ones where no person would likely be present." *Id.* at 773.

The Fourth Circuit reached a similar conclusion in *Uribe v. Sessions*, 855 F.3d 622, 626–27 (4th Cir. 2017), holding that a violation of a Maryland statute criminalizing burglary of an unoccupied dwelling is a CIMT. Under Maryland law a structure retains its character as a dwelling even if temporarily left vacant as long as the dwelling has not been abandoned completely by the occupants and remains suitable for occupancy during the vacancy. *Id.* at 626. Like the BIA in *Matter of J-G-D-F*, the Fourth Circuit was "persuaded that an individual's expectation that her dwelling will remain private, secure, and free from intruders intending to commit a crime is violated regardless of whether the dwelling is occupied at the time of the burglary." *Id.* at 627.

Mr. Lauture argued to the BIA that cases like *Matter of J-G-D-F-* did not control because Florida's burglary statute defines a dwelling much more broadly and does not require that "a dwelling be occupied regularly, intermittently[,] or ever." A.R. at 31. The BIA, faced with this argument, addressed whether under the "realistic probability" component of the categorical approach Mr.

Lauture could show that Florida "prosecutes non-turpitudinous burglaries of an unoccupied dwelling." A.R. at 7 (citing *Moncrieffe*, 569 U.S. at 206, and *Duenas-Alvarez*, 549 U.S. at 193).

The BIA concluded that Mr. Lauture presented "no . . . case" of such a prosecution. *Id.* It explained that this failure was not "surprising," for in "considering the 'theoretical possibility' of a burglary conviction based on an entry into or remaining in a dwelling that is truly *never* occupied, one must be left to wonder how such a crime could arise in the first place. After all, the Florida burglary statute requires that the dwelling be 'designed to be occupied by people lodging therein at night[.]'" A.R. at 7 (quoting § 810.011(2)) (emphasis in original). "Because [Mr. Lauture] ha[d] not presented a case of a burglary prosecuted in Florida in which the dwelling was truly *never* occupied, he ha[d] not established a realistic probability of such a case." A.R. at 8.

The problem with the BIA's analysis is that Mr. Lauture did present a Florida case allowing a burglary prosecution for entry into a dwelling that had never been occupied. In *Bennett*, 565 So. 2d 803, the Second District held that an unsold and pre-fabricated mobile home on a sales lot, which was fully furnished but unoccupied and not connected to utilities, could constitute a "dwelling" for purposes of a burglary prosecution so long as it was "actually to be used for habitation." *Id.* at 804–05. The Second District therefore reversed a trial court order reducing a charge of burglary of a

dwelling (a second-degree felony) to burglary of a structure (a third-degree felony).  *See id.*[4]

Though furnished, an unsold mobile home on a sales lot—never occupied and not connected to utilities—arguably does not present the same privacy and safety concerns that inhabited dwellings typically present.  *See Matter of J-G-D-F-*, 27 I. & N. Dec. at 88; *Diaz-Flores*, 993 F.3d at 772; *Uribe*, 855 F.3d at 627.  Indeed, as the Second District acknowledged in *Bennett*, an unsold mobile home on a sales lot can be converted to a number of non-residential uses, such as office space.  *See Bennett*, 565 So. 2d at 805.  Mr. Lauture cited *Bennett* to the BIA (just as he did to the IJ), and it was error for the BIA not to address the impact of that case on the "realistic probability" component of the categorical approach.

The government argues on appeal that *Bennett* does not ultimately matter because the Second District required a showing that the mobile home would be used for habitation.  *See* Br. for Respondent at 33–34.  Maybe so, but it is the BIA and not the government that has to figure out the impact of *Bennett*.  Moreover, the government's take on *Bennett* does not account for the BIA's mistaken belief that there are no Florida burglary cases involving a dwelling which had never been occupied.

---

[4] The Second District retreated from *Bennett* in *Munoz v. State*, 937 So. 2d 686, 688–89 (Fla. 2d DCA 2006), but the Florida Supreme Court later disapproved of *Munoz* in *Young v. State*, 141 So. 3d 161, 167 (Fla. 2013).  So *Bennett* remains good law today.

*Bennett* aside, the BIA may have misread Florida burglary law with respect to dwellings for additional reasons.  Here's why.

First, the BIA said that it could not imagine a burglary prosecution in Florida for a dwelling that was "never occupied."  *See* A.R. at 7 (emphasis removed).  But a Florida Supreme Court case decided after *Bennett* affirms that "[o]ccupancy is no longer a critical element under [the statutory] definition" of burglary, and explains that "a structure's design or suitability for habitation, rather than actual occupancy or intent to occupy, controls in determining whether a structure constitutes a dwelling [under § 810.011(2)]." *Young*, 141 So. 3d at 166 (citation omitted). *See also Jacobs v. State*, 41 So. 3d 1004, 1006–07 (Fla. 1st DCA 2010) (holding that a jury could reasonably find that a vacant home under renovation, with roof and walls and equipped with utilities that were not turned on, was a dwelling under § 810.011(2) though it had been unoccupied for several years due to a fire).

Second, the BIA cited *Munoz*, 937 So. 2d at 689, for the proposition that in Florida a "conviction for burglary of an unoccupied dwelling will not stand . . . where the house 'was undergoing a total restoration' and 'was missing interior walls, sheetrock, and insulation.'"  A.R. at 8.  As noted in footnote 4, however, the Florida Supreme Court disapproved of *Munoz* in *Young*, 141 So. 3d at 167. So *Munoz* is no longer a valid statement of Florida burglary law with respect to dwellings.

We could attempt to determine ourselves whether *Bennett* (by itself or in conjunction with cases like *Young* and *Jacobs*)

satisfies Mr. Lauture's burden of demonstrating a "realistic probability" that Florida will apply his statute of conviction, § 810.02(3)(b), to burglaries that are not categorically CIMTs under the BIA's framework.  But that would not be appropriate because it is the BIA which must first grapple with the Florida decisions discussed above.  "Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002). *See also Accardo v. U.S. Att'y Gen.*, 634 F.3d 1333, 1339 (11th Cir. 2011) (remanding case to the BIA to apply the modified categorical approach in the first instance upon concluding that it erred in applying the categorical approach); *N.L.R.B. v. Enter. Ass'n of Pipefitters*, 429 U.S. 507, 522 n.9 (1977) ("When an administrative agency has made an error of law, the duty of the [c]ourt is to 'correct the error of law committed by that body, and, after doing so to remand the case to the [agency] so as to afford it the opportunity of examining the evidence and finding the facts as required by law.'") (citation omitted).  So vacatur and remand are in order.

## V

We vacate the BIA's decision and remand so that the BIA can address *Bennett* (and the other Florida cases discussed in this opinion) under the "realistic probability" component of the categorical approach.  Once it does so, the BIA can determine whether Mr. Lauture's conviction for burglary of an unoccupied dwelling in violation of Fla. Stat. § 810.02(3)(b) is categorically a CIMT.

19-13165                Opinion of the Court                21

PETITION GRANTED.