[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 21-10390

Non-Argument Calendar

————————————————

FRANCISCO FAJARDO-REBOLLAR,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A200-954-204

————————————————

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Francisco Fajardo-Rebollar, a native and citizen of Mexico, seeks review of the BIA's order affirming the IJ's finding that he was ineligible for cancellation of removal under INA § 240A(b)(1)(C), 8 U.S.C. § 1229b(b)(1)(C). Mr. Fajardo argues that the BIA erred in affirming the denial of his application by finding that he had not established 10 years of continuous physical presence in the United States. Because his Georgia conviction for pandering under O.C.G.A. § 16-6-12 was a crime involving moral turpitude ("CIMT") that rendered him ineligible for cancellation of removal, we affirm on that ground.

As background, Mr. Fajardo entered the United States without inspection at or near Nogales, Arizona, on August 1, 1999. In April of 2006, he pleaded *nolo contendere* in Georgia to pandering—that is, solicitation of prostitution—and received a sentence of 12 months' probation. *See* O.C.G.A. § 16-6-12. In August of 2011, DHS served him with an NTA, charging him as removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without having been admitted or paroled. The NTA lacked a time and place to appear.

Mr. Fajardo admitted to the factual allegations in the NTA and conceded the charge of removability but filed an amended application for cancellation of removal and adjustment of status for

certain non-permanent resident aliens. In his application, he alleged that he had resided in the United States since August 27, 1999, but left on June 1, 2003, and returned without inspection on March 1, 2004.

The IJ entered an oral order pretermitting the application for cancellation of removal because Mr. Fajardo failed to establish ten years of continuous physical presence within the United States between March 1, 2004, and when he was served the NTA, on August 31, 2011. Alternatively, the IJ found that his Georgia pandering conviction was a CIMT that rendered him ineligible for cancellation of removal.

The BIA affirmed the IJ's order, dismissing Mr. Fajardo's appeal. As to his pandering conviction, specifically, it concluded that Georgia's pandering statute was not categorically overbroad and, thus, it was bound by BIA precedent and that of several other circuits concluding that solicitation of prostitution is a CIMT.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision. *See Flores-Panameno v. U.S. Att'y Gen.*, 913 F.3d 1036, 1040 (11th Cir. 2019). And we do not reach issues not considered by the BIA. *See Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). Whether a previous conviction qualifies as a CIMT is a legal question that we review *de novo*. *See Lauture v. U.S. Att'y Gen.*, 28 F.4th 1169, 1172 (11th Cir. 2022).

As an initial matter, the BIA erred in concluding that the "stop-time" rule applied to Mr. Fajardo's case. *See* INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1) (providing that an alien's period of continuous physical presence is deemed to end when the noncitizen is served with an NTA). *See also* INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1) (providing that the Attorney General has the discretion to cancel removal if an alien establishes, among other things, ten years of continuous physical presence in the United States). Following the BIA's order, the Supreme Court issued a decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480-86 (2021), holding that that the stop-time rule may only be triggered by a single document that contains all the information required to be in an NTA. Because DHS did not include the requisite time-and-place information in the initial NTA served on Mr. Fajardo, the NTA did not trigger the stop-time rule to terminate Mr. Fajardo's continuous presence in the United States. *See id.* at 1480 (stating that the stop-time rule requires "a" notice, meaning a "single document containing the required information, not a mishmash of pieces with some assembly required"). As such, whether the BIA counted from his March 2004 return or 2006 conviction, Mr. Fajardo established ten years of continuous physical presence in the United States from that time until the BIA's 2021 adjudication. *See* INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1) (providing that the period of continuous physical presence is stopped when an alien is convicted of a CIMT). *See also Matter of Isidro-Zamorano*, 25 I. & N. Dec. 829, 831 (BIA 2012).

21-10390                 Opinion of the Court                      5

But Mr. Fajardo's ten years of continuous physical presence in the United States does not entitle him to relief if his Georgia pandering conviction is a CIMT.  That is because a conviction for a CIMT renders an alien ineligible for cancellation of removal.  *See* INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i).  *See also Resendiz-Alcaraz v. U.S. Att'y Gen.*, 383 F.3d 1262, 1268 (11th Cir. 2004) (a plea of *nolo contendere* is considered a conviction for immigration purposes if a judge ordered some form of punishment, including probation).  We have defined a CIMT as "[a]n act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Walker v. U.S. Att'y Gen.*, 783 F.3d 1226, 1229 (11th Cir. 2015) (quotation marks omitted & alteration in original).  To involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state.  *See Zarate v. U.S. Att'y Gen.*, 26 F.4th 1196, 1200-01 (11th Cir. 2022).

For statutes that are indivisible, we apply the categorical approach to determine whether a particular conviction constitutes a CIMT, looking "to the statutory definition of the crime rather than the underlying facts of the conviction." *Cano v. U.S. Atty. Gen.*, 709 F.3d 1052, 1053 (11th Cir. 2013).  Under that approach, we ask "whether the least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude." *Id.* at 1053 n.3 (quotation marks omitted).

When Mr. Fajardo was convicted, Georgia defined pandering as follows:

> A person commits the offense of pandering when he or she solicits a person to perform an act of prostitution in his or her own behalf or in behalf of a third person or when he or she knowingly assembles persons at a fixed place for the purpose of being solicited by others to perform an act of prostitution.

O.C.G.A. § 16-6-12. Because the Georgia pandering statute does not list alternative elements but instead "enumerates various factual means of committing a single element," it is indivisible, and we apply the categorical approach. *See Spaho v. U.S. Att'y Gen.*, 837 F.3d 1172, 1177 (11th Cir. 2016) (citing *Mathis v. United States*, 579 U.S. 500, 506 (2016)).

A Georgia pandering conviction qualifies as a CIMT because it necessarily involves an intentional act that was base, vile, and depraved. The pandering statute criminalizes the solicitation of prostitution on behalf of oneself or another, or knowingly assembling at a place to be solicited for prostitution. *See* O.C.G.A. § 16-6-12. Put another way, Mr. Fajardo's conviction involved the seeking out or provision of "perform[ing] or offer[ing] or consent[ing] to perform a sexual act, including[,] but not limited to[,] sexual intercourse or sodomy, for money or other items of value." *See* O.C.G.A. § 16-6-9 (2001) (defining prostitution at the time of Mr. Fajardo's conviction). Pandering, therefore, "always involves sexual exploitation." *Rohit v. Holder*, 670 F.3d 1085, 1090 (9th Cir.

2012) (California conviction for solicitation of prostitution was a CIMT). Such acts are base, vile, and depraved. *See Walker*, 783 F.3d at 1229. *See also Reyes v. Lynch*, 835 F.3d 556, 560-61 (6th Cir. 2016) (Nevada conviction for solicitation of prostitution was a CIMT); *Gomez-Gutierrez*, 811 F.3d 1053, 1059 (8th Cir. 2016) (Minnesota conviction for solicitation of prostitution was a CIMT).

Mr. Fajardo argues that the Georgia pandering statute is overbroad because the offense "include[s] conduct outside of 'sexual intercourse.'" *See* Appellant's Brief at 6-7. But he does not provide any support for this argument. Nor does he provide any further explanation.

To the extent that Mr. Fajardo argues that a conviction for Georgia pandering is not a CIMT because it could encompass solicitation of sodomy, he is incorrect. Sodomy is no longer a crime. *See* O.C.G.A. § 16-6-2; *Lawrence v. Texas*, 539 U.S. 558, 565 (2003). But *solicitation* of sodomy remains a criminal offense under Georgia law. *See* O.C.G.A § 16-6-15. And although sodomy does not involve "sexual intercourse" as the term is defined under Georgia law, sodomy is still a "sexual act." *See* O.C.G.A. § 16-6-2(a)(1). The solicitation of that act therefore raises the same concerns of exploitation as prostitution involving "sexual intercourse."

Mr. Fajardo also may be arguing that Georgia's pandering statute criminalizes conduct that would not be considered prostitution under the INA. *See* INA § 212, 8 U.S.C. § 1182(a)(2)(D)(i); *Matter of Gonzalez-Zoquiapan*, 241 I. & N. Dec. 549, 553 (BIA 2008). Mr. Fajardo, however, is not being removed under § 1182

because of the INA's prohibition on prostitution.  He is being removed for entering the country without being admitted or paroled and his application for cancellation of removal was pretermitted under § 1229b because he committed a CIMT, and a CIMT does not have to meet the INA's definition of prostitution to constitute a CIMT.  *See Rohit*, 670 F.3d at 1091 (citing *Gonzalez-Zoquiapan*, 241 I. & N. Dec. at 554).  Consequently, Mr. Fajardo cannot show that the BIA erred in affirming the denial of his application for cancellation of removal.

**PETITION DENIED.**